**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal Number: |
| | : | VIOLATIONS: |
| v. | : | Count One: 26 U.S.C. § 7201 (Tax Evasion) |
| ITALIA FEDERICI, Defendant. | : | Count Two: 18 U.S.C. § 1505 (Obstruction of U.S. Senate Proceedings) |

**INFORMATION**

THE UNITED STATES OF AMERICA CHARGES THAT:

Unless specified otherwise, at all times relevant to this Information:

Introduction

1. The defendant, ITALIA FEDERICI, was the founder and President of the Council of Republicans for Environmental Advocacy ("CREA"), which was originally founded in Colorado in or about 1997 as the "Coalition of Republicans for Environmental Activists." After initially operating from proceeds FEDERICI received from an inheritance, CREA thereafter operated primarily through donations.

2. In or about 1998, defendant FEDERICI, relocated CREA to Washington, D.C., with the substantial assistance of J. Steven Griles, who was then a Washington, D.C., lobbyist. Griles took an active interest in CREA and thereafter assisted in raising funds for CREA.

3. On or about September 14, 2000, CREA was formally incorporated in Washington, D.C., as an Internal Revenue Code Section 501(c)(4) organization. Since that time, CREA also had a vice president, whose responsibilities included overseeing CREA's day-to-day

financial management. From in or about March 2001, through in or about May 2003, CREA received approximately $723,500 through donations and advocacy work.

**Count One**
**(Tax Evasion, 26 U.S.C. § 7201)**

4. Paragraphs 1 through 3 of this Information are realleged as though fully set forth herein.

CREA's Financial Operation and Business Practices

5. From in or about 2001, through in or about 2003, defendant FEDERICI and CREA's vice president relied primarily on cash, including ATM transactions, to handle the finances of CREA. As a result, CREA failed to maintain proper financial books and records of its bank and business accounts. This extensive use and reliance on cash by CREA continued throughout this period despite admonitions from CREA's accountants who were engaged to prepare CREA's Forms 990.

6. From in or about 2001, through in or about 2003, CREA was operated in such a manner that the personal finances of the officers and the finances of CREA were not properly segregated. In lieu of taking a regular salary, defendant FEDERICI and CREA's vice president obtained funds from CREA by directly withdrawing cash from CREA's bank account through ATM and teller transactions. The defendant and CREA's vice president also received checks from CREA.

7. From in or about 2001, through in or about 2003, CREA's accountant issued Forms 1099 to defendant FEDERICI and CREA's vice president in an effort to account for the money the officers withdrew from CREA's bank accounts. Despite admonitions to CREA from CREA's accountant, the improper issuance of Forms 1099 to report compensation to officers, instead of Forms W-2 and payroll reporting, continued during this period.

8. For Tax Year 2001, $51,613 in income from CREA was reported to defendant FEDERICI on a Form 1099.

9. On or about April 15, 2002, a request for an extension of time within which to file the U.S. Individual Income Tax Return for 2001 was filed on behalf of defendant FEDERICI, to extend the filing deadline for her 2001 tax return to August 15, 2002. The defendant did not include payment of taxes due and owing with the extension request as required by law.

10. On or about August 15, 2002, defendant FEDERICI willfully failed to timely file a U.S. Individual Income Tax Return, or pay the taxes due and owing, of $16,614.

11. For Tax Year 2002, $92,201 in income from CREA was reported to defendant FEDERICI on a Form 1099.

12. On or about April 15, 2003, a request for an extension of time within which to file the U.S. Individual Income Tax Return for 2002 was filed on behalf of defendant FEDERICI, to extend the filing deadline for her 2002 tax return to August 15, 2003. The defendant did not include payment of taxes due and owing with the extension request as required by law.

13. On or about August 15, 2003, defendant FEDERICI willfully failed to timely file a U.S. Individual Income Tax Return, or pay the taxes due and owing, of $32,846.

14. For Tax Year 2003, $90,145 in income from CREA was reported to defendant FEDERICI on a Form 1099.

15. On or about April 15, 2004, a request for an extension of time within which to file the U.S. Individual Income Tax Return for 2003 was filed on behalf of defendant FEDERICI, to extend the filing deadline for her 2003 tax return to August 15, 2004. The defendant did not include payment of taxes due and owing with the extension request as required by law.

16. On or about August 15, 2004, a second request for an extension of time within which to file the U.S. Individual Income Tax Return for 2003 was filed on behalf of defendant FEDERICI, to extend the filing deadline for her 2003 tax return to October 15, 2004. The defendant did not include payment of taxes due and owing with the extension request as required by law.

17. On or about October 15, 2004, defendant FEDERICI willfully failed to timely file a U.S. Individual Income Tax Return, or pay the taxes due and owing, of $31,178.

Defendant's Tax Evasion

18. During the calendar years 2001 through 2003, the defendant, ITALIA FEDERICI, a resident of the District of Columbia, had and received taxable income in the sum of $233,955 upon which there was owing to the United States of America an income tax of $77,243; well-knowing and believing the foregoing facts, ITALIA FEDERICI, on or about April 15, 2002, April 15, 2003, and April 15, 2004, respectively, in the District of Columbia, did willfully attempt to evade and defeat the income tax due and owing by her to the United States for the calendar years 2001 through 2003 by failing to make a U.S. Individual Income Tax Return on or before the above due dates as extended, as required by law, to any proper officer of the Internal Revenue Service; by failing to pay to the Internal Revenue Service said income tax; by failing to cause taxes to be withheld from her salary; by failing to file Forms 941; by using ATM cash transactions and other cash withdrawals as salary; by causing her income to be reported on Forms 1099 instead of Forms W-2, when she was in fact an employee; and by failing to file Forms 1099 in a timely fashion.

ALL IN VIOLATION OF TITLE 26, UNITED STATES CODE, SECTION 7201.

**Count Two**
**(Obstruction of U.S. Senate Proceedings, 18 U.S.C. § 1505)**

19. Paragraphs 1 through 3 of this Information are realleged as though fully set forth herein.

Federici's Communications with Jack A. Abramoff and J. Steven Griles

20. On or about March 8, 2001, Griles was nominated to be the Deputy Secretary of the United States Department of the Interior ("DOI"), the second-highest ranking official within DOI. DOI was the Federal agency responsible for, among other things, such Native American matters as tribal recognition, gaming compacts and applications to place land into trust for gaming purposes, and distributing Federal program funds.

21. On or about March 1, 2001, one week before Griles' nomination, the defendant, ITALIA FEDERICI, introduced Griles to Jack A. Abramoff, a Washington, D.C., lobbyist who represented Native American tribal governments and other entities subject to DOI oversight. Abramoff and his clients had a substantial and recurring interest in decisions made by DOI and its officials. During their meeting, the three discussed a variety of issues, including Griles' impending nomination, Abramoff's interests in DOI issues and recommending colleagues for high-level DOI positions, and CREA's funding. Shortly thereafter, Abramoff, personally and through his clients, became a substantial contributor to CREA. In fact, from in or about March 2001, through in or about May 2003, Abramoff and his clients donated approximately $500,000 to CREA.

22. On or about July 12, 2001, Griles was confirmed by the United States Senate, and he thereafter served as DOI Deputy Secretary until he resigned on or about January 31, 2005.

23. During much of Griles' tenure as DOI Deputy Secretary, defendant FEDERICI served as a conduit for information between Abramoff and Griles in order to foster Abramoff's and his client's interests. In such a role, the defendant would communicate in-depth with Abramoff about his clients and the issues and concerns applicable to them, and then communicate in-depth with Griles about these issues and/or forward to Griles white papers and other information and documents Abramoff supplied. The defendant also met with Abramoff and Griles in order to speak substantively and directly about these issues.

The United State Senate Committee on Indian Affairs Investigation

24. In or about the Fall of 2004, the United States Senate Committee on Indian Affairs ("Senate Committee") began an official investigation into allegations of misconduct by Abramoff and others made by several Native American tribes. As part of the Senate Committee's investigation, defendant FEDERICI submitted to a voluntary investigative interview conducted by Senate investigators on or about October 7, 2005. The defendant then testified before members of the Senate Committee during a public hearing conducted on or about November 17, 2005.

25. During both the October 7, 2005 investigative interview and the November 17, 2005 public hearing, the Senate Committee focused on, among other areas of inquiry, the extent to which defendant FEDERICI, Abramoff, and Griles communicated about issues pending before DOI that directly affected Abramoff's clients while Griles served as DOI Deputy Secretary. The defendant was aware of the scope of the Senate Committee's inquiry before her October 7, 2005 interview began.

26. During both the October 7, 2005 investigative interview and the November 17, 2005 public hearing, defendant FEDERICI was questioned about, among other things, the extent to which she, Abramoff, and Griles communicated about issues pending before DOI that directly affected Abramoff's clients while Griles served as DOI Deputy Secretary. It was material to the Senate Committee's investigation that the Senators and Senate investigators who questioned the defendant learned the truth about the extent of the communication involving her, Abramoff, and Griles during Griles' DOI tenure.

Defendant's Obstruction of Proceedings Before the United States Senate

27. From on or about October 7, 2005, through on or about November 17, 2005, in the District of Columbia, the defendant, ITALIA FEDERICI, did knowingly and corruptly influence, obstruct, and impede, and endeavor to influence, obstruct, and impede the due and proper exercise of the power of inquiry under which an investigation and review was being had by the United States Senate and a Committee of the United States Senate. That is, during her October 7, 2005 interview with investigators working for the United States Senate Committee on Indian Affairs, and during her November 17, 2005 testimony at a public hearing held before members of the United States Senate Committee on Indian Affairs, defendant FEDERICI knowingly and intentionally made a series of materially false and fictitious declarations to, and withheld material information from, Senators and Senate investigators in response to questions about the extent to which she, Abramoff, and Griles communicated about issues pending before DOI that directly affected Abramoff's clients while Griles served as DOI Deputy Secretary.

ALL IN VIOLATION OF TITLE 18, UNITED STATES CODE, SECTION 1505.

FOR THE UNITED STATES

WILLIAM M. WELCH, II
Chief
Public Integrity Section
United States Department of Justice
Criminal Division

BRUCE M. SALAD
Chief
Southern Criminal Enforcement Section
United States Department of Justice
Tax Division

KARTIK K. RAMAN
Trial Attorney
Public Integrity Section

ARMANDO O. BONILLA
Trial Attorney
Public Integrity Section

KAREN E. KELLY
SUSAN H. VRAHORETIS
MARK F. DALY
Trial Attorneys
Criminal Enforcement Section

June 5, 2007