UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No.  07–145 (ESH) |
| | : | |
| v. | : | |
| | : | |
| ITALIA FEDERICI | : | |
| | : | |
| Defendant. | : | |

## UNITED STATES' MOTION TO REDUCE DEFENDANT'S SENTENCE PURSUANT TO SENTENCING GUIDELINES § 5K1.1

The United States, by and through its undersigned attorneys, hereby moves this Court pursuant to United States Sentencing Guidelines ("U.S.S.G.") § 3E1.1 to reduce the sentence otherwise applicable to the defendant, Italia Federici, by either two or three levels (from either Level 14 to Level 12, or from Level 16 to Level 13, depending on what Combined Adjusted Offense Level the Court ultimately deems is applicable in this case), due to the defendant's acceptance of responsibility and her timely notice to the Government of her intent to cooperate and plead guilty.  Pursuant to U.S.S.G.  § 5K1.1, the Government further moves the Court to reduce the sentence otherwise applicable to the defendant by three-levels (from either Level 12 or Level 13), which results in a Zone B sentence, to reflect her substantial assistance in the investigation and prosecution of others, including James Steven Griles, the former Deputy Secretary of the United States Department of the Interior.

1

In support of this pleading, the Government submits the attached Substantial Assistance Memorandum.

Respectfully submitted,

**FOR THE UNITED STATES:**

**WILLIAM M. WELCH, II**
Chief
Public Integrity Section
United States Department of Justice
Criminal Division

　/s/ Kartik K. Raman
**KARTIK K. RAMAN**
**ARMANDO O. BONILLA**
Trial Attorneys
Public Integrity Section


**RICHARD T. MORRISON**
Acting Assistant Attorney General
United States Department of Justice
Tax Division

　/s/ Karen E. Kelly
**KAREN E. KELLY**
**MARK F. DALY**
**SUSAN H. VRAHORETIS**
Trial Attorneys
Criminal Enforcement Section

**CERTIFICATE OF SERVICE**

     I, Kartik K. Raman, hereby certify that on this 11th day of December, 2007, I caused to be electronically filed with the Clerk of the Court, using the CM/ECF system, complete copies of the United States' Motion to Reduce Defendant's Sentence Pursuant to Sentencing Guidelines § 5K1.1 and the accompanying United States' Substantial Assistance Memorandum, which will automatically cause e-mail notifications of these filings to be sent to Jonathan N. Rosen, Esq. and Noam B. Fischman, Esq., counsel for the defendant, Italia Federici.

                                                /s/ Kartik K. Raman
                                         **KARTIK K. RAMAN**
                                           Trial Attorney
                                           Public Integrity Section

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | Criminal No.  07–145 (ESH) |
| | : | |
| v. | : | |
| | : | |
| **ITALIA FEDERICI** | : | |
| | : | |
| **Defendant.** | : | |

## UNITED STATES' SUBSTANTIAL ASSISTANCE MEMORANDUM

In support of the United States' recommendation of a substantial assistance departure for the defendant, Italia Federici, the Government submits the following.

### I.      Introduction

The plea papers and Pre-Sentence Investigation Report ("PSR") set forth in detail the facts underlying defendant Federici's offenses and all relevant conduct.  However, we submit a brief overview of Federici's misconduct to provide context for the Government's departure motion, as well as to explain why the Court should find that Federici falls at a United States Sentencing Guidelines ("U.S.S.G.") Combined Adjusted Offense Level of 14, rather than the Level 16 calculated in the PSR.

### II.      Background to the Charges and the Factual Basis for Federici's Plea

Federici, now 38, pleaded guilty on June 8, 2007 to one count of income tax evasion, in violation of 26 U.S.C. § 7201, and one count of obstructing the investigation of the U.S. Senate Committee on Indian Affairs ("the Senate investigation") into former lobbyist Jack Abramoff, in violation of 18 U.S.C. § 1505.  Until recently, she was the president of the Council of Republicans for Environmental Advocacy ("CREA"), a non-profit organization she founded in Colorado in 1997 and incorporated in Washington D.C. in 2000 as an Internal Revenue Code

1

§ 501(c)(4) corporation. The income tax evasion charge and underlying factual basis to which Federici admitted are nearly identical to those to which Robert Jared Carpenter, CREA's vice-president, pleaded guilty on July 6, 2007. Carpenter will also be sentenced by the Court on December 14, 2007.[1]

Federici's guilty plea arose out of her association with then-lobbyist Jack Abramoff and James Steven Griles, who was confirmed as the Deputy Secretary of the Department of the Interior ("DOI") on July 12, 2001 and served until he resigned effective January 31, 2005. At relevant times, Federici and Griles were involved in a "close, personal relationship," and Griles helped raise funds for CREA, which had operated primarily through donations after its inception. On March 23, 2007, Griles pleaded guilty in United States v. James Steven Griles, Crim. No. 07-079 (D.D.C.), to obstructing the Senate investigation, in violation of 18 U.S.C. § 1505. The Court sentenced Griles on June 26, 2007 to serve ten months in prison, pay a $30,000 fine, and serve three years of supervised release. Abramoff pleaded guilty on January 3, 2006 in United States v. Jack A. Abramoff, Crim. No. 06-001 (D.D.C.), and awaits sentencing.[2]

---

[1]Carpenter's case, United States v. Robert Jared Carpenter, Crim. No. 07-171 (D.D.C.), is being prosecuted by the undersigned Tax Division attorneys. Carpenter pleaded guilty after Federici had begun her cooperation and entered her guilty plea. Carpenter faces a lesser sentence than Federici, whom the PSR places at Level 13, as Carpenter pleaded guilty only to the tax charge. The PSR for Carpenter's case reflects that he falls at Level 12 (10-16 months; Zone C), after a two-point reduction for acceptance of responsibility. However, the Factual Basis for Plea in Carpenter's case is nearly identical to the tax factual basis filed in Federici's case, in that the tax crime to which Carpenter admitted is essentially the same as that to which Federici admitted.

[2]On January 4, 2006, Abramoff also pleaded guilty in the Southern District of Florida to separate charges related to a fraudulent business venture. United States v. Jack A. Abramoff, Crim. No. 05-60204 (S.D. Fla.). For these offenses, he was sentenced on March 29, 2006 to serve 70 months in prison and pay restitution of more than $21 million. He began serving his sentence on November 15, 2006 and has thereafter continued to cooperate in the ongoing investigation into his lobbying activities, including his association with Griles and Federici.

In her guilty plea, Federici acknowledged that on March 1, 2001, she introduced Abramoff to Griles just before Griles' nomination as DOI's Deputy Secretary. At the time of this introduction, Abramoff and his clients had a substantial and recurring interest in decisions made by DOI and its officials. Shortly after the March 1, 2001 meeting, Abramoff, personally and through his clients, became a substantial contributor to CREA, and between March 2001 and May 2003, Abramoff and his clients donated approximately $500,000 to CREA.

Federici further admitted that after Griles was confirmed, she served as a "conduit for information" between Abramoff and Griles during much of Griles' DOI tenure, in order to foster Abramoff's and his lobbying clients' interests. In this role, she would communicate in-depth with Abramoff about his clients and the issues and concerns applicable to them, and then communicate in-depth with Griles about these issues and/or forward to Griles information and documents Abramoff supplied. Federici also admitted that she met with Abramoff and Griles in order to speak substantively and directly about these issues while Griles was DOI Deputy Secretary. Because of these contacts, Federici admitted, her involvement as a conduit between Abramoff and Griles hindered DOI's official record-keeping about Griles' contacts with lobbyists such as Abramoff and DOI's internal ability to measure the level of Abramoff's access to Griles.

The obstruction charge against Federici arises out of false testimony she gave under oath during the Senate's investigation. The Senate was investigating serious allegations that Abramoff had unfettered access to, and undue influence over, certain officials within DOI, including Griles, immediately prior to and during Griles' tenure as Deputy Secretary. Several witnesses, including Griles and Federici, were interviewed and testified at public hearings.

Federici was questioned by Senate investigators during an October 7, 2005 investigative interview and asked about, among other things, the extent to which she, Abramoff, and Griles communicated about issues pending before DOI that directly affected Abramoff's clients while Griles served as DOI's second-highest ranking official. She was similarly questioned by Committee members at a November 17, 2005 public hearing. During both the interview and public hearing, Federici concealed her role as a conduit for information and lied about the extent of the communications involving her, Abramoff, and Griles.[3] As she admitted in her guilty plea, her false testimony thus obstructed the Senate's power of inquiry into these public corruption allegations.

Besides pleading guilty to obstructing the Senate's investigation, Federici also pleaded guilty to willfully evading her individual income taxes for the calendar years 2001-2003 by, inter alia, failing to segregate her personal finances from CREA's, using cash to handle CREA's and her own personal finances, failing to maintain proper books and records or properly report CREA's payroll, failing to file her U.S. individual income tax returns on or before the relevant due dates, and then failing to pay the income taxes owed. Federici admitted that in lieu of taking a regular salary, she and Carpenter, CREA's other officer, obtained funds from CREA by directly withdrawing cash from CREA's bank account through ATM and teller transactions. The tax loss involved in Federici's conduct is approximately $77,243.[4]

The tax charges against Federici (and Carpenter) were developed after questions were raised during the Senate hearing regarding CREA's financial operations and business practices.

---

[3]Examples of these lies are identified in Federici's Factual Basis for Plea and recounted in the PSR.

[4]Moreover, the tax loss in the two income tax evasion cases is almost the same, as Carpenter admitted to a tax loss of approximately $74,241for the same 2001-2003 period.

Indeed, during both the October 7, 2005 Senate interview and the November 17, 2005 public hearing, Federici was asked to testify about not only her relationship with Abramoff and Griles, but also CREA's financial operations and business practices, including her payment of taxes. In response to questions about CREA's operations and taxes, Federici made certain false statements that were not charged, but which are relevant to the grouping analysis applicable to her U.S.S.G. Combined Adjusted Offense Level, and which the Government submits cause her tax and obstruction offenses to group because the two offenses are intertwined and are part of the same overall common plan or scheme.

For instance, during her November 17, 2005 hearing testimony, Federici did not testify fully and truthfully when questioned by Senators about CREA's financial operations and business practices, including tax issues. By way of example, when asked the following questions by a Senator, she gave the following materially false statements:

> Q: Ms. Federici . . . let me ask you, has any of the funding that has come to the [Internal Revenue Code Section 501] (c)(4) [non-profit organization] that you are involved in been used by you personally or for political purposes?
>
> A: I pay myself a salary. We have salaries.
>
> Q: Beyond a salary, you have not converted that to personal use in any way, and you have not used it for political purposes?
>
> A: . . . No. . . . .
>
> Q: Have you ever made any use of the money for purely personal expenses for [sic] [or] campaign work-related contributions?
>
> A: Do you mean did I ever write a CREA check for a campaign?
>
> Q: That was the question, or any for purely personal expenses?
>
> A: No; not to the best of my recollection. No.

See, e.g., 11/19/07 Transcript of the testimony of Italia Federici at 48-49, provided during the "Gimme Five" – Investigation of Tribal Lobbying Matters, Hearing before the Senate Committee on Indian Affairs (109th Congress, First Session).

While the Factual Basis for Plea did not specifically reference the above-noted false statements, these statements and the underlying conduct were arguably part of Federici's overall scheme or plan, which included both perjury and tax evasion. The perjury not only obstructed the Senate's investigation, but also served to conceal Federici's failure to properly segregate her finances from CREA's finances, and her receipt of unreported income, which was the basis of the tax evasion charge. Put simply, Federici and CREA's then vice-president withdrew money from CREA for personal use in lieu of paying themselves regular salaries and reporting those wages to the Internal Revenue Service ("IRS"), and Federici perjured herself when she made the above-noted false statements about those failures.[5]

### III. Applicable Guidelines Calculations

Under the Guidelines applicable to Federici's case, Federici falls at Level 14 for Count One of the Information, the tax charge, due to the $77,243 loss associated with her conduct. U.S.S.G. §§ 2T1.1(a)(1), 2T4.1(E). For Count Two, the obstruction charge, she also falls at Level 14. U.S.S.G. § 2J1.2.

The parties stipulated in the Plea Agreement that the two offenses are closely-related and thus group under application of U.S.S.G. §§ 3D1.3(a) and 3D1.4, resulting in a Combined

---

[5]Federici was similarly questioned about CREA's financial operations and business practices, including relevant tax issues, during her October 7, 2005 Senate interview. Pages 17, 18, 19, and 24 of the interview transcript, in addition to other portions of the transcript, further exemplify why the tax and obstruction offenses should be grouped.

Adjusted Offense Level of 14.[6]  With a two-point reduction for acceptance of responsibility, we then contemplated that she would be sentenced at Level 12 (10-16 months; Zone C), before any potential downward departure for substantial assistance.  However, the PSR finds that the offenses do not group, and after the operation of a multiple count adjustment under U.S.S.G. § 3D1.4, determines that Federici should be at Level 16.  After a three-level reduction for acceptance of responsibility, the PSR concludes that she falls at Level 13, resulting in a Zone D sentence (12-18 months) before substantial assistance is considered.

      Contrary to the PSR, the Government believes the offenses group.  Most importantly, because the Factual Basis for Plea does not set forth the above-highlighted false statements Federici made during the Senate's investigation about CREA's financial operations and business practices, including her payment of taxes -- which bear on the grouping issue -- Federici's tax and obstruction offenses group because the two offenses are intertwined and are part of the same overall common plan or scheme.  Additionally, the offenses group under Application Note 5 to U.S.S.G. § 3D1.2 (Grouping of Closely-Related Counts), which discusses when conduct is a specific offense characteristic of the other offense (i.e., obstruction of justice as an offense characteristic of evasion).  Application Note 5 provides that obstruction of justice groups with the tax offenses, providing "however, a count such as obstruction of justice, which represents a Chapter Three adjustment and involves a different harm or societal interest than the underlying offense, is covered by subsection ( c) even though it is not covered by subsection (a)."

---

      [6]The Plea Agreement's estimated Guidelines calculations, to which the parties stipulated, are set forth in ¶¶ 10( c) and (d).  Because the PSR concludes that the offenses do not group, the Government objects to the PSR's Guidelines calculations.  See PSR at pp. 26-27.  Of course, the Government recognizes, and the Plea Agreement unequivocally states, that "sentencing is within the discretion of the Court and that the Court is not bound by [the plea] agreement."  Plea Agreement at ¶ 8.

The Court should thus group the two offenses of conviction and find that Federici's Offense Level, after accounting for acceptance of responsibility, is Level 12.

### IV.     Federici's Assistance in Related Cases and Other Investigative Matters

Both before and after her June 8, 2007 guilty plea, Federici provided substantial assistance to the Government on several matters, resulting in, among other things, the Government's ability to secure a significant prison sentence for Griles.

#### A.     United States v. James Steven Griles, Crim. No. 07-79 (D.D.C.)

Federici's plea negotiations concluded after Griles had already pleaded guilty on March 23, 2007.  However, because we were able to debrief Federici pursuant to a May 15, 2007 proffer agreement -- well before Griles was sentenced on June 26, 2007 -- Federici assisted us substantially prior to the sentencing phase in our case against Griles, during the approximately six-week period between the time we concluded our plea discussions with her and the time of Griles' sentencing hearing.  During that period, among other things, she alerted us during many debriefings to several seminal facts that the investigation had not yet uncovered or suspected, and she eventually stipulated to an expansive Factual Basis for Plea which ultimately illuminated for the Court and the public the extent of Griles' corrupt dealings with Abramoff.

As the Court is aware, the March 23, 2007 Factual Basis for Griles' guilty plea contained limited stipulations which portrayed his corrupt relationship with Abramoff.  Indeed, Griles ultimately stipulated to the fact that "Abramoff occasionally sought and received – both directly and through Person A [Federici] – Griles' advice and intervention on various matters within the jurisdiction of DOI that directly affected Abramoff and his clients."  See Griles' 3/23/07 Factual Basis for Plea, ¶ 6.

Griles' Factual Basis for Plea was focused largely upon lies he told Senate investigators about his "personal and romantic relationship with Person A [Federici]." Id. at ¶¶ 3, 5, 8, and 10. This permitted Griles to try and re-cast his guilty plea from one where he admitted to concealing his corrupt dealings with Abramoff, to one where he only "admitted concealing the true nature and extent of his relationship with Ms. Federici, who introduced Mr. Griles to Mr. Abramoff, how and why his relationship with Mr. Abramoff thereafter developed, and the nature of Mr. Abramoff's access to Mr. Griles." See Griles' 6/8/07 Sentencing Memorandum at 2. Griles perhaps stipulated to such limited facts with the intent of trying to limit the perception about how precisely he obstructed the Senate, thereby enabling him to be in the position of being able to spin the events and argue at sentencing, among other things, that he "met Mr. Abramoff through Ms. Federici, but he [only] did not inform the Senate Committee that Mr. Abramoff was the only lobbyist that he met through Ms. Federici, a person with whom he had a personal and at times romantic relationship." Id. In sum, before Federici pleaded guilty, Griles was poised to argue that he lied about his dealings with Abramoff because that relationship developed out of a personal relationship with Federici, which Griles apparently did not want to reveal publicly to the Senate.

Federici's cooperation permitted us to rebut these assertions successfully and to put Griles' limited characterizations about his dealings with Abramoff into question. The facts underlying Federici's guilty plea also apparently convinced the Court to double the prison sentence to which the parties had stipulated in Griles' plea agreement. We interviewed Federici several times before Griles' sentencing hearing, and she provided investigators with numerous credible facts that we ultimately utilized in the Government's June 15, 2007 Sentencing

9

Memorandum to corroborate (and supplement) our beliefs about what transpired between Abramoff and Griles, to fill in numerous details about Griles' dealings with Abramoff that we did not yet know, and to thereby counter Griles' limited version of events. And, contrary to Griles' limited stipulation that "Abramoff occasionally sought and received – both directly and through Person A [Federici] – Griles' advice and intervention on various matters within the jurisdiction of DOI that directly affected Abramoff and his clients," Federici's expansive factual proffer recounted for the Court and the public several rich examples reflecting Abramoff's unfettered access to Griles and the corrupt relationship which thereby ensued.[7] Among the topics on which Federici shed light, and to which she stipulated and accepted responsibility, are the following:

- Griles' role in planning the September 2001 CREA-sponsored dinner.

- Griles' role in inquiring into the Coushatta Tribe of Louisiana land dispute.

- Griles' role in arranging for Abramoff a Commonwealth of the Northern Mariana Islands ("CNMI") governor's race candidate's meeting and "photo op" with the DOI Secretary and canceling a similar meeting for a candidate Abramoff opposed.

- Griles' role in helping Abramoff derail the land-into-trust application of the Gun Lake Tribe.

- Griles' role in assisting Abramoff in preventing the Jena Band of Choctaw Indians from placing land-into-trust for gaming purposes in Louisiana and Mississippi.

- Griles' role in assisting Abramoff in learning how to win recognition for a prospective client of Abramoff's, the Mashpee Wampanoag Tribe of Massachusetts.

---

[7] These examples are recounted extensively in the Government's June 15, 2007 Sentencing Memorandum.

- Griles' role in helping Abramoff overcome DOI's alleged refusal to release approximately $3 million in appropriated funds to Abramoff's client, the Saginaw Chippewa Indian Tribe (of Michigan), in connection with the School Cost Share Program.

See Federici's 6/6/07 Factual Basis for Plea, ¶ 8. Federici also corroborated many of the additional details about Griles' relationship with Abramoff which are recounted in the Government's Sentencing Memorandum and which were further reported at Griles' sentencing hearing.

Griles' obstructive statements perverted the congressional inquiry by preventing the Senate from discovering, inter alia, the true extent of Abramoff's access to defendant Griles; the true number and type of official acts and favors defendant Griles performed for Abramoff; the true number and type of return favors defendant Griles requested of Abramoff; and the true extent of the employment negotiations between defendant Griles and Abramoff. Federici's guilty plea and subsequent cooperation permitted us in the sentencing phase of Griles' case to tell the full story for which Griles was apparently unwilling to accept responsibility.

We further believe that the admissions contained in Federici's Factual Basis for Plea, as well as what Federici described at length for us before Griles' sentencing hearing, played a significant role in the Court's eventual decision to double the prison time contemplated in Griles' plea agreement. The transcript from Griles' sentencing hearing reflects many examples where the Court appears to have drawn upon Federici's signed Factual Basis in challenging Griles' limited account of what happened between him and Abramoff and what he was actually accepting responsibility for doing. Consider the following illustrative exchange between defense counsel and the Court:

11

| Griles' Counsel | ... They [the Government] do not have one scintilla of evidence, even mentioned in the Italia Federici plea agreement about talking in-depth, which is the word they use for all the other issues, talking in-depth with Mr. Griles about contributions from Mr. Abramoff. Not a word. |
|---|---|
| The Court: | ... <u>looking only at her plea agreement though, you can't dispute the notion that if she is serving as a conduit with his knowledge to providing inside information to Mr. Abramoff, that that is a pretty big thing</u>. |

Transcript of 6/26/07 Sentencing Hearing in United States v. Griles at 44-45 (emphasis supplied). Close examination of the sentencing hearing transcript yields further examples.

### B.   Federici's Participation in Other Investigative Matters

As with other cooperators in the investigation arising out of Abramoff's lobbying activities, Federici participated in other significant investigative activities, was debriefed on numerous occasions, and performed meaningful research at the investigators' behest on several more occasions, logging more than 100 hours with investigators before her sentencing. These actions, which concern a wide range of persons and topics, have been of substantial assistance in various way to the Government and its investigators.

### V.   Important Equities for the Court's Consideration

For his obstruction offense, Griles' PSR calculated that he fell at Level 12, after the two-point reduction for acceptance of responsibility. At Level 12, Griles fell in Zone C (10-16 months). Under the plea agreement (which was executed before Federici had cooperated), the Government agreed to make a non-binding recommendation of a "split sentence" of ten months imprisonment (i.e., five months imprisonment and five months home confinement). However, Griles ultimately received ten months imprisonment, the low-end of the applicable sentencing range, and a $30,000 fine. In addition to the above-highlighted reasons,

we believe that Griles received that sentence because the Court apparently found his allocution wanting. In fact, just prior to handing down Griles' sentence, the Court remarked to Griles, "even now, you continue to minimize and try to excuse your conduct and the nature of your misstatements." Id. at 62. By contrast, in pleading guilty, Federici has acknowledged responsibility for the extent of her actions and cooperated extensively with the Government. Given her level of cooperation, it seems inequitable for Federici to face a Level 13 sentence, when Griles -- a very senior, high-level public official who held a significant position of public trust -- faced only a Level 12 sentence for his crimes.

In asking the Court to consider these equities inherent to Federici's case, we are mindful that unlike Griles, Federici also pleaded guilty to a tax offense. And, in fashioning the sentence appropriate for Federici's misconduct, we recognize that here, in addition to punishing the wrongdoing associated with Federici's obstruction of the Senate investigation, the Court must ensure that her failure to report and pay her fair share of taxes -- like that of CREA's former vice-president -- must not go unpunished. Indeed, the tax system in the United States relies upon the voluntary compliance of each taxpayer to assess and pay their fair share of taxes into the system. Taxpayers need to believe that there are substantial consequences for lying on their tax returns and not paying their fair share of taxes. The Government does not therefore ask the Court to exempt Federici from her criminal failure to adhere to these essential obligations.[8] This is especially true because Tax-exempt organizations such as CREA enjoy special status under the

---

[8] In her plea agreement, Federici also agreed to pay the IRS outstanding taxes due taxes due and owing thereon for the calendar years 2001-2003 in the amount of $77,243 plus interest, and to sign a restitution order agreeing to pay the IRS taxes due and owing for the calendar years 2001-2003 in this amount. If restitution is not paid by the sentencing date, the Government requests that a restitution order also be entered.

tax code, in that charities and other non-profit organizations do a great deal of work to benefit American communities. The tax benefits to a tax exempt organization are subsidized by other taxpayers,[9] and it is essential that the tax laws affecting donors and tax exempt organizations operate in a manner that benefits the American public.[10] Officers of these organizations, such as Federici and CREA's former vice-president, necessarily owe the American public complete transparency in reporting the salaries they earn.

###    VI.    The Government's Sentencing Recommendation

Regardless of whether the Court finds that Federici falls at Level 12 or Level 13, her cooperation merits a downward departure under U.S.S.G. § 5K1.1 for her substantial assistance. Applying the factors identified by the Sentencing Guidelines and 18 U.S.C. § 3553(a), Federici's cooperation was timely and substantial. Her statements to investigators were truthful, complete and reliable, and her information was consistent with the other evidence we had in our case. Likewise, her cooperation was extensive, for the above-mentioned reasons, and she has agreed to continue in her cooperation as needed, including in any future trial or grand jury testimony which may arise. Finally, given her expansive Factual Basis for Plea, no single individual was perhaps more important to Griles' sentencing hearing than Federici, making her cooperation both significant and useful. See U.S.S.G. § 5K1.1.

---

[9] See, e.g., Minority Staff of Senate Committee On Finance, 109th Congress 2d Session, S. PRT. 109-68, Investigation of Jack Abramoff's Use of Tax-exempt Organizations, p. 12 (Government Printing Office, Oct. 2006).

[10] Id. at 9.

For these reasons, the Government requests a three-level downward departure for substantial assistance (whether the Court concludes that Federici falls at Level 12 or 13), and asks that Federici's sentence be imposed at the low end of the resulting Level (Level 9 or Level 10), which is within Zone B of the Guidelines.  In accordance with the schedule of punishments established for Zone B sentences in U.S.S.G. § 5C1.1(e)(3), the Government further recommends home detention to satisfy any term of incarceration.

Respectfully submitted,

**FOR THE UNITED STATES:**


**WILLIAM M. WELCH, II**
Chief
Public Integrity Section
United States Department of Justice
Criminal Division

   /s/ Kartik K. Raman
**KARTIK K. RAMAN**
**ARMANDO O. BONILLA**
Trial Attorneys
Public Integrity Section


**RICHARD T. MORRISON**
Acting Assistant Attorney General
United States Department of Justice
Tax Division

   /s/ Karen E. Kelly
**KAREN E. KELLY**
**MARK F. DALY**
**SUSAN H. VRAHORETIS**
Trial Attorneys
Criminal Enforcement Section