HONORABLE ELLEN SEGAL HUVELLE, UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**FILED**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Docket No.: <u>CR-07-145-01</u> |
| | : | |
| vs. | : | SSN: |
| | : | |
| FEDERICI, Italia | : | Disclosure Date: <u>October 12, 2007</u> |

DEC 1 4 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

## RECEIPT AND ACKNOWLEDGMENT OF PRESENTENCE INVESTIGATION REPORT

This is to acknowledge that each of the undersigned has received and reviewed the Presentence Investigation Report (PSR) in the above-entitled case. The undersigned further acknowledges that:

### For the Government
(CHECK APPROPRIATE BOX)

( ) There are no material/factual inaccuracies therein.

(X) There are material/factual inaccuracies in the PSI report as set forth in the attachment herein.

_____       _____
Prosecuting Attorney                                                  Date

### For the Defendant
(CHECK APPROPRIATE BOX)

( ) There are no material/factual inaccuracies therein.

(✓) There are material/factual inaccuracies in the PSI report as set forth in the attachment.

_Italia Federici_  10/24/07                    _[signature]_  10/25/07
Defendant           Date                       Defense Counsel   Date

### NOTICE OF OBLIGATION OF THOSE EXECUTING THIS FORM

Pursuant to Local Rule 32(f)(2), those executing this form shall first submit any material inaccuracies or disputes in writing by <u>October 26, 2007</u>, to U.S. Probation Officer <u>Renee Moses-Gregory</u>, telephone number <u>(202) 565-1348</u>, fax number <u>(202) 273-0242</u>.

Pursuant to Rule 32(b)(6)(B), effective December 1, 1994, it shall be the responsibility of the Attorney for the Government and the Defense Counsel to provide each other with a copy of the objections at the same time the objections are filed with the probation office.

FOR THE COURT

By:  Gennine A. Hagar, Chief
     United States Probation Officer

RECEIPT AND ACKNOWLEDGMENT
OF PRESENTENCE INVESTIGATIVE REPORT
ADDENDUM A

Paragraph 2:

Ms. Federici pled guilty on June 8, 2007.

Paragraphs 69-71:

These paragraphs incorrectly state that Ms. Federici was arrested on three separate occasions. To the contrary, Ms. Federici received a traffic citation on April 20, 1996 (Paragraph 69) and on June 7, 1996 (Paragraph 70). The draft PSR correctly states in Paragraph 71 that Ms. Federici was arrested for traffic violations on June 22, 1996.

Paragraph 75:

This paragraph incorrectly states that Ms. Federici's father maintained a separate household. Ms. Federici's father lived with Ms. Federici, her mother, and her sister until Ms. Federici was seven years of age, at which time Ms. Federici relocated to Florida with her mother and sister.

Paragraph 77:

Ms. Federici cannot confirm whether the recitation of her sister's statements is true. However, Ms. Federici disagrees with her sister's statement that this "Administration" has not supported her. Nevertheless, Ms. Federici acknowledges that, through her cooperation, she has severed relationships with people she once considered friends.

Paragraph 79:

Ms. Federici was engaged to be married during late May, 2005, with a set wedding date scheduled for April 26, 2006. The engagement ended in early 2006, in large part due to the excessive stresses that the Government's investigation caused Ms. Federici and her then- fiancé. Ms. Federici and her fiancé had intended to start a family shortly after becoming married.

Paragraph 83:

Ms. Federici would like to reiterate that she reluctantly underwent the surgical procedure in 2002.

Paragraph 84:

In 1990 or 1991, Ms. Federici was diagnosed with a bleeding ulcer that was caused by anxiety. Ms. Federici's anxiety during that period resulted from the aggregate stress of several extreme factors such as the death of her father, her mother's then recent diagnosis of breast cancer, and a disinheritance proceeding instituted by her half-siblings.

Paragraph 86:

In August 2007, at the suggestion of the Probation Officer, Ms. Federici sought counseling from the Georgetown University Hospital. Soon thereafter, Ms. Federici began counseling sessions with Dr. Kincead-Acree twice per week. Dr. Kincead-Acree diagnosed Ms. Federici with a Major Depressive disorder (*i.e*, Clinical Depression), single episode criteria, meaning that her depression was the result of external life events, including the Government's investigation and this proceeding. Dr. Kincead-Acree prescribed Zoloft for Ms. Federici. Ms. Federici has been taking Zoloft in compliance with Dr. Kincead-Acree's instructions, and has found it to be extremely helpful to her. Ms. Federici has not previously been diagnosed with depression or any psychological disorder.

Ms. Federici attaches representative medical bills from Georgetown University Hospital to verify her diagnosis.

Paragraph 88:

While in Connecticut, Ms. Federici suffered from a bleeding ulcer caused, in part, by the anxiety Ms. Federici felt as a result of her father's death, her mother's diagnosis as having breast cancer, and a disinheritance proceeding initiated by her half siblings. Shortly after Ms. Federici was diagnosed with a bleeding ulcer, Ms. Federici's Aunt, Helene Matesky, recommended that Ms. Federici attend biofeedback therapy sessions. Ms. Federici agreed to do so, and these sessions lasted a significant period of time. Ms. Federici ceased biofeedback therapy because she had accepted a job in Florida and relocated there.

Paragraph 89:

Ms. Federici cannot confirm whether the recitation of her sister's statements is true. However, Ms. Federici did not attend therapy at the University of Connecticut. Ms. Federici speculates that her sister, who was a thirteen year old teenager living with her mother in Iceland at the time, was likely thinking of the biofeedback therapy discussed in Ms. Federici's response to Paragraph 88, above.

Paragraph 90:

Consistent with the instructions Ms. Federici received from Dr. Kincead-Acree, Ms. Federici has abstained from the consumption of alcohol since she began taking Zoloft in August, 2007.

Paragraph 97:

Ms. Federici completed several semesters' worth of credits towards her degree in Architectural Engineering at the Pennsylvania State University ("PSU"). Notwithstanding her academic progress, Ms. Federici was required to enroll as a first year student when she transferred to the University of Miami, which, as a private institution, elected not to accept her PSU credits.

Paragraph 103:

Ms. Federici's monthly medical expenses are now $400.00.

Paragraph 116:

Ms. Federici respectfully objects to the conclusion that the two offenses do not group under U.S.S.G. § 3D1.2(c). The law and facts warrant grouping under U.S.S.G. §§ 3D1.2(b) and 3D1.2(c).

U.S.S.G. § 3D1.2(b)

The two offenses group under U.S.S.G § 3D1.2(b). In particular, they share a common victim. Compare United States v. Peterson, 312 F.3d 1300, 1303 (10th Cir. 2002) (finding that society is the victim of tax evasion) with United States v. Berkowitz, 712 F. Supp. 707, 710 (N.D. Ill. 1989) (grouping offenses, in part, on grounds that the United States Attorney as "a representative of society . . . cannot reasonably be construed as a victim separate from society . . . ."), overruled on other grounds, 927 F.2d 1376 (7th Cir. 1991). Analogous to Berkowitz, the Senate via, one of its Committees, was acting in its representative capacity on behalf of the United States.

Moreover, the two offenses involve a "common criminal objective" or are "part of a common scheme or plan." For example, the two investigations giving rise to the two offenses in this case shared a common and overlapping investigatory objective, requests for document production, and subject matter.

Both DOJ and the Senate Committee on Indian Affairs (the "Committee") were investigating, among other things, Ms. Federici's financial records, including her 2001-2003 taxes. On March 21, 2005, the Department of Justice served Ms. Federici with a subpoena seeking CREA's financial documents, including: "[a]ny and all tax returns and tax return information, including but not limited to all W-2s, form 1099s, schedules, draft returns, work papers, and backup documents filed, created or held by or on behalf of the

CREA for tax years 1998 to present." Similarly, on April 5, 2005, the Committee served CREA with a subpoena that requested CREA financial documentation related to the tax filings that CREA made while in existence. These requests sought nearly identical information. Ms. Federici's production of documents in response to both subpoenas was substantially the same, including information specific to Ms. Federici's earned income between 2001 and 2003.

Moreover, each investigation examined Ms. Federici about her financials. In her October 7, 2005, deposition with the Chief Investigative Counsel for the Committee, Ms. Federici was questioned about her income between 2001 and 2003. See Federici Deposition, 18:2-4 (asking about salary history); 18-17-19 (asking Ms. Federici to align salary with various tax years); 19:6 (asking about filing of tax returns); 23:7-24:25 (asking about taxes from 1997 through 2004). Notably, when Ms. Federici appeared before the Committee on November 17, 2005, she was specifically asked about her salary from CREA, how she spent her income, and its general conformity with the tax code. Similarly, on May 25, 2006, DOJ specifically asked Ms. Federici several questions concerning CREA's tax filings, including the identity of those responsible for their generation and Ms. Federici's knowledge of their content. Moreover, DOJ asked questions relating to CREA's books and records.

In short, the overlapping investigations and their common attributes clearly demonstrate that the counts involve "one composite harm . . . even if they constitute legally distinct offenses occurring at different times." See U.S.S.G. § 3D1.2, comment. (n.4).

### U.S.S.G. § 3D1.2(c)

The offenses also merge pursuant to § 3D1.2(c). As stated above, obstruction of justice is an offense characteristic of tax evasion. Moreover, grouping is warranted even if, *assuming arguendo*, the two offenses involve "a different harm or societal interest." See U.S.S.G. § 3D1.2(c), comment. (n.5).

Grouping is further mandated by Application Note 8 of § 3C1.2 which states that "if the defendant is convicted both of an obstruction offense . . . and an underlying offense (the offense to which the obstructive conduct occurred), the count for the obstruction offense will be grouped with the count for the underlying offense under subsection (c) of § 3D1.2 (Groups of Closely Related Counts). See U.S.S.G. § 3C1.2, comment. (n.8). As evidenced by the above-mentioned facts relating to grouping under U.S.S.G. § 3D1.2(b), Ms. Federici's tax evasion and her ensuing conduct before the Committee qualify as such interrelated conduct.

4173564v.1